#27748-aff in pt & rev in part-SLZ

**2016 S.D. 94**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KENNETH HOFFMAN,                          Plaintiff and Appellee,

    v.

BOB LAW, INC. and
BOB LAW, individually,                    Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHERYLE W. GERING
Judge

* * * *

DANIEL K. BRENDTRO
DENNIS DUNCAN
AMANDA W. ENGEL of
Zimmer, Duncan & Cole, LLP
Sioux Falls, South Dakota                 Attorneys for plaintiff
                                          and appellee.


MARK D. FITZGERALD
RONALD E. TEMPLE of
Fitzgerald, Vetter, Temple & Bartell
Norfolk, Nebraska                         Attorneys for defendants
                                          and appellants.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 3, 2016

OPINION FILED **12/14/16**

#27748

ZINTER, Justice

[¶1.]        A homeowner whose fixtures encroached on adjoining landowner's property sued for an implied easement to keep the encroachments on the adjoining property.  The adjoining landowner counterclaimed for trespass and sought a mandatory injunction to compel removal of the encroachments.  The circuit court denied the homeowner's claim for an implied easement.  On the adjoining landowner's counterclaim, the court ruled the encroachments constituted a trespass.  Nevertheless, the court denied the adjoining landowner's request for a mandatory injunction to remove the encroachments.  The court awarded the adjoining landowner nominal damages and ordered removal if the encroachments became subject to relocation in the future.  Adjoining landowner appeals the denial of its request for the mandatory injunction and the order allowing the encroachments to remain until they are relocated in the future.  We affirm in part, reverse in part, and remand.

*Facts and Procedural History*

[¶2.]        Bob Law, Inc. (the "Corporation"), owned by Bob Law, is an excavation and land development company that owned a real estate development west of Yankton known as the Crestview Addition.  The Corporation entered into an agreement with Rick DeJager to jointly develop Crestview.  DeJager was the general contractor responsible for the construction and sale of the homes and lots.  The Corporation was to grade the roads and do all the dirt and excavation work.  The development was surveyed, and seven pins were placed to mark the boundaries of Lot 3.  The pin marking the southwest corner of the lot was subsequently lost.

-1-

Lot 3 is burdened by a ten foot utility easement on the west side. The Corporation owns the unplatted lot west of Lot 3, which is referred to by the parties as Lot 4.

[¶3.] Construction on Lot 3 began in October 2003 when the Corporation still owned the lot. The Corporation excavated the basement for a house and it graded a dirt driveway. Due to construction difficulties, the Corporation placed the basement twenty feet west of its planned location.[1] In November 2003, the Corporation directed an electrical contractor to place a transformer on the property line between Lots 3 and 4. However, the transformer was mistakenly placed on Lot 4, outside of the utility easement, fourteen feet west of the property line. Both the Corporation and DeJager continued building under the mistaken belief that the transformer marked the property line.

[¶4.] After the basement was excavated, the Corporation roughed in a water line. A septic system was also installed. The parties disputed when the system was installed and who installed it. After the Corporation conveyed Lot 3 to DeJager and his wife on December 30, 2003, DeJager installed a concrete retaining wall, concrete pad, and lamp pole.[2] He also poured concrete for the driveway that had been graded by the Corporation. Parts or all of these improvements were mistakenly located on Lot 4 instead of Lot 3. DeJager and his wife lived in the home until 2009

---

1.  DeJager testified that he raised concerns to Law about the septic tank location after moving the basement. According to DeJager, Law replied, "I own this land."

2.  At some point a propane tank was installed on the concrete pad; however, the court did not determine who installed it.

or 2010 when they defaulted on their loan and declared bankruptcy. Lot 3 was subsequently conveyed to the bank that held the mortgage.

[¶5.] In May 2011, Appellee Kenneth Hoffman entered into an agreement to purchase Lot 3 from the bank. Although Hoffman could have had the lot surveyed at no expense, he was in a hurry to close on the home and decided to forego a survey. Closing took place on June 10. Hoffman testified that the day after closing, Law contacted Hoffman and informed him that there was an encroachment on Lot 4.[3] The two met on June 12. Law measured the property lines and noted the encroachments on Lot 4. After the meeting, Law proposed to move the septic system's leach field for $150,000 and sell Hoffman an easement for the septic tank for $25,000.[4] Hoffman testified that when he did not immediately accept this proposal, Law threatened to dig out the septic system.

[¶6.] Hoffman obtained a temporary restraining order (and later a preliminary injunction) prohibiting Law and the Corporation from removing the septic system. Hoffman's underlying complaint claimed that he had acquired an implied easement on Lot 4 for the encroachments. The Corporation counterclaimed for trespassing.[5] The Corporation sought money damages (rental value and diminution in value of the lot) as well as a mandatory injunction to remove the encroachments.

---

3. Law claimed he did not learn of any encroachments until June 11.

4. Moving the septic system would require the removal of twelve to fifteen feet of dirt, installing a lift station, and landscaping a sloped area.

5. Although the complaint and counterclaim included Bob Law as a defendant, he was only a party for purposes of the temporary restraining order.

[¶7.] A two-day court trial was held in December 2015. A survey showed that the septic tank, propane tank, concrete pad for the propane tank, lamp pole, and portions of the concrete retaining wall and driveway encroached on a small portion of Lot 4. The circuit court found that the septic system was installed by the Corporation before the lot was conveyed to DeJager and that DeJager installed the other encroachments.

[¶8.] The court denied Hoffman's claim for an implied easement, a ruling that he does not appeal.[6] On the Corporation's counterclaim, the court ruled that the encroachments constituted a trespass. But because the Corporation failed to present evidence of damages,[7] the court awarded $1 in nominal damages. The court also denied the Corporation's request for an injunction. It reasoned that the Corporation had an adequate remedy at law (damages); the encroachments were on a small sliver of land that could not be used due to the utility easement; Hoffman did not install the encroaching items; and the cost to remove the encroachments would be disproportionate to any benefit to be gained by the Corporation. The court

6. The court considered the claim as a request for an implied easement for prior use. *See Thompson v. E.I.G. Palace Mall, LLC*, 2003 S.D. 12, ¶ 14, 657 N.W.2d 300, 305. The court denied the request relating to the septic system because when unity of title was severed upon conveyance of Lot 3 to DeJager, the use of the septic system was not "so long continued and so obvious as to show that it was meant to be permanent." The court denied the request for an implied easement for the remaining encroachments because those encroachments were not in place, and thus not in use, at the time unity of title was severed when the Corporation conveyed Lot 3 to DeJager.

7. The Corporation claimed diminution in value damages relating to Lot 4. Law testified that he received an offer of $65,000 for the property, far below his asking price of $140,000. The circuit court did not find this damage evidence credible. The Corporation's attorney conceded in closing argument that no evidence of actual damages was presented.

further ordered that the encroachments would not be subject to a current or future court order of removal; but if the encroachments were subject to relocation by Hoffman or his successors in interest, they would have to be removed from Lot 4 and relocated on Lot 3.

[¶9.] The Corporation appeals. It argues that the circuit court erred in denying an injunction requiring Hoffman to remove the encroachments. It also argues that nominal damages are an inadequate remedy and the court should not have allowed the encroachments to remain. We first address the court's denial of the Corporation's request for an injunction compelling removal of the encroachments. We then address the court's remedy: an award of nominal damages and allowing the encroachments to temporarily remain.

*Decision*

*Injunctive Relief*

[¶10.] We recently clarified our standard of review for the grant or denial of an injunction. *Magner v. Brinkman*, 2016 S.D. 50, ¶ 19, 883 N.W.2d 74, 82-83. We first determine whether an injunction was statutorily authorized under SDCL 21-8-14, a question of law we review de novo. *Id.* ¶ 19, 883 N.W.2d at 83. If the injunction was authorized, "the court's subsequent decision to grant or deny the injunction is reviewed for an abuse of discretion." *Id.* An abuse of discretion is an error of law or "discretion exercised to an unjustified purpose, against reason and evidence." *Stahl v. Pollman*, 2006 S.D. 51, ¶ 9, 716 N.W.2d 794, 796. Findings of fact will not be set aside unless clearly erroneous. *Strong v. Atlas Hydraulics, Inc.*, 2014 S.D. 69, ¶ 10, 855 N.W.2d 133, 138.

[¶11.] The Corporation contends that it was statutorily entitled to a mandatory injunction compelling removal of the encroachments. Under SDCL 21-8-14(1), an injunction may be granted if "pecuniary compensation would not afford adequate relief." Generally, when structures encroach on private property, pecuniary compensation will not afford adequate relief to the landowner. That is because denying an injunction to remove an encroachment and awarding money damages amounts to private eminent domain, and "no one should be permitted to take land of another merely because he is willing to pay a market price for it." 1 Dan B. Dobbs, *Law of Remedies* § 5.10(4), at 816 (2d ed. 1993); *see also Kratze v. Indep. Order of Oddfellows*, 500 N.W.2d 115, 120 (Mich. 1993); *Graham v. Deutsche Bank Nat'l Tr. Co.*, 768 S.E.2d 614, 617 (N.C. Ct. App. 2015); *Williams v. S. & S. Rentals, Inc.*, 346 S.E.2d 665, 668-69 (N.C. Ct. App. 1986). Further, in such cases, the encroacher could obtain a property right by adverse possession, which could result in a complete loss of title. *See* SDCL 15-3-13; *Underhill v. Mattson*, 2016 S.D. 69, ¶¶ 11-17, 886 N.W.2d 348, 352-54. Because pecuniary compensation often fails to provide adequate relief in encroachment cases, we hold that the injunction was authorized. *See Graven v. Backus*, 163 N.W.2d 320, 325 (N.D. 1968) ("The general rule is that a mandatory injunction is a proper remedy to invoke against an adjoining landowner to compel him to remove an encroachment.").

[¶12.] Authorization for an injunction does not, however, equate with entitlement to an injunction. In determining whether to grant or deny an injunction, a number of factors are considered, including:

> (1) Did the party to be enjoined cause the damage? (2) Would irreparable harm result without the injunction because of lack of an adequate and complete remedy at law? (3) Is the party to be

> enjoined acting in bad faith or is the injury-causing behavior an innocent mistake?  (4) In balancing the equities, is the hardship to be suffered by the enjoined party disproportionate to the benefit to be gained by the injured party?

*Strong*, 2014 S.D. 69, ¶ 11, 855 N.W.2d at 138.

[¶13.]        Here, with respect to the first and third factors, the circuit court found that Hoffman did not cause the damage and he was not acting in bad faith.  The record supports these findings.  The evidence reflects that the Corporation was responsible for the location of the septic system and that the remaining encroachments were installed by the Corporation's development partner, DeJager.  Further, we agree with the circuit court's finding that Hoffman's failure to obtain a survey did not constitute bad faith.

[¶14.]        With respect to the second factor, for the reasons previously expressed, *see supra* ¶ 11, pecuniary compensation would not have afforded adequate relief.  Neither damages nor ejectment will afford the landowner adequate relief in most cases.  1 Dobbs, *supra*, § 5.10(4), at 815-16.  Encroaching structures pose the threat of adverse possession.  Without an injunction, a trespasser may eventually obtain title, which is an injury that "go[es] to the destruction of the estate."  *See Beatty v. Smith*, 14 S.D. 24, 84 N.W. 208, 210 (1900); *see also In re Estate of Siebrasse*, 2002 S.D. 118, ¶ 9, 652 N.W.2d 384, 386 (noting the availability of an equitable remedy because land is unique); *O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996) ("More fundamentally, monetary relief fails to provide adequate compensation for an interest in real property, which by its very nature is considered unique.").  Thus, the second factor weighs in favor of granting an injunction.

[¶15.]    However, the fourth factor plays the dominant role in encroachment cases. Because of their effect on real property interests, encroachments have "posed special problems and produced special solutions." 1 Dobbs, *supra*, § 5.10(4), at 815. On the one hand, "no one should be permitted to take land of another merely because he is willing to pay a market price for it." *Id.* at 816; *see also Kratze*, 500 N.W.2d at 120; *Graham*, 768 S.E.2d at 617; *Williams*, 346 S.E.2d at 668-69. On the other hand, requiring removal of an encroachment may constitute economic waste if the encroaching structure must be destroyed. 1 Dobbs, *supra*, § 5.10(4), at 816. Thus, the "dominant approach in the encroachment cases is to balance the relative hardships and equities and to grant or deny the injunction as the balance may seem to indicate." *Id.* The balancing of equities "encourages the denial of injunctive relief where the expense or hardship to be suffered by the [trespasser] is disproportionate to the small benefit to be gained by the injured party." *Foley v. City of Yankton*, 89 S.D. 160, 166, 230 N.W.2d 476, 479 (1975). A court may deny an injunction if the hardship to the trespasser—e.g., the cost to remove the encroachment and loss of value to the remaining structure—is disproportionate to any benefit gained by the landowner. *Graven*, 163 N.W.2d at 325; 1 Dobbs, *supra*, § 5.10(4), at 818; *see also Harksen v. Peska*, 1998 S.D. 70, ¶ 33, 581 N.W.2d 170, 176 (holding it would be inequitable to compel removal of a $100,000 home that violated a restrictive covenant but did not inflict any damages on other landowner, even though home builder was on notice of the restrictive covenant).

[¶16.]    In balancing the equities relating to the septic system, the circuit court found that "the hardship that would be suffered by Mr. Hoffman is disproportionate to any benefit to be gained by Bob Law, Inc., or Bob Law in ordering the removal of"

the septic system.[8] The record supports this finding. The court found it would have cost $150,000 to move the leach field and $25,000 for an easement to keep the septic tank where it was. The court also found that this encroachment was on a "small sliver of land" and that "clearly there [was] no way that anything [could] be built in that corner" because of the utility lines. "[N]either extortion nor economic waste that may be entailed in destroying a structure is desirable." 1 Dobbs, *supra*, § 5.10(4), at 816. Additionally, Hoffman played no role in contributing to this encroachment. The court specifically found that the Corporation excavated the hole for the septic tank at its current location while Lot 3 was still owned by the Corporation.[9] Whether the landowner contributed to the encroachment is a factor to be taken into consideration. *See id.* at 817. Balancing all of the relevant factors, we agree that the hardship to be suffered by Hoffman in removing this encroachment that the Corporation created is disproportionate to any harm that would be suffered by the Corporation. The circuit court did not abuse its discretion in denying an injunction to remove the septic system.

---

8. The Corporation contends that the relative-hardship test should not apply because Hoffman acted willfully and with full knowledge of the Corporation's rights and the consequences that might ensue. *See Foley*, 89 S.D. at 166, 230 N.W.2d at 479. However, the circuit court specifically found that Hoffman did not act in bad faith, and the record does not support the Corporation's factual assertion regarding Hoffman's knowledge.

9. The Corporation denies excavating the hole for the septic tank prior to conveying the property to DeJager. However, there is sufficient evidence in the record to support the court's contrary finding. The Corporation did all the dirt work on the property, and DeJager testified that he did not dig the hole for placement of the septic tank. Law also signed a receipt for a septic tank on November 19, 2003, around the same time the Corporation finished digging the basement.

[¶17.] The Corporation contends that even if the septic system need not be removed, Hoffman should still be required to remove the lamp pole, concrete pad, propane tank, and encroaching portions of the concrete retaining wall and driveway. The Corporation correctly points out that the circuit court did not balance the relative hardships and equities to remove these encroachments.[10] And the injunction should only be denied if there is disproportionality. *See Clear Lake Riviera Cmty. Ass'n v. Cramer*, 105 Cal. Rptr. 3d 815, 825 (Cal. Ct. App. 2010) ("[T]he hardship to the [trespasser] from granting the injunction 'must be *greatly disproportionate* to the hardship caused [landowner] by the continuance of the encroachment and this fact must clearly appear in the evidence and must be proved by the [trespasser].'").

[¶18.] In this case, removal of the remaining encroachments may be unlike the removal of an entire building or structure at an enormous and disproportionate expense. *Compare Amkco, Ltd. v. Welborn*, 21 P.3d 24, 29 (N.M. 2001) (denying removal when removal would result in loss of $188,837 in expenses, plus annual profits, and a $1,250,000 project when value of encroached land was $14,700), *and Graven*, 163 N.W.2d at 326 (denying removal when cost to remove and rebuild encroachment was $5,300 and value of the portion of land encroached on was between $8.50 and $9.00), *with The Highlands, Inc. v. Hosac*, 936 P.2d 1309, 1313-14 (Idaho 1997) (affirming grant of injunction to remove portion of driveway and

---

10. It appears the circuit court rested its decision primarily on its finding that the Corporation had an adequate remedy at law. The court did not consider the effect that the encroachments had on the Corporation's property interests when balancing the equities, s*ee supra* ¶ 16, and instead found that the parties were "at least on equal footing."

landscaping when homeowner "would not suffer a loss of value due to removal of the encroachment"), *and Royse v. Easter Seal Soc'y for Crippled Children & Adults, Inc.*, 256 N.W.2d 542, 546 (N.D. 1977) (stating injunction is proper remedy for encroachment over three-quarters of an easement that significantly decreased easement's value). *See also Harksen*, 1998 S.D. 70, ¶ 33, 581 N.W.2d at 176. The remaining encroachments are separate from the main structure, and some might be removed without loss of enjoyment or damage to the home. Further, there is evidence that both parties were at least somewhat aware of the encroachments prior to June 10, 2011, when Hoffman purchased the property; and Hoffman was, in the court's words, negligent in failing to have a survey conducted before purchasing the property. *See* 1 Dobbs, *supra*, § 5.10(4), at 817 ("Even if the [trespasser] is merely negligent, that will weigh as one factor against him and in favor of the mandatory injunction.").[11] Although we express no opinion on the weight to be given to these factors, we reverse and remand because the circuit court did not balance the equities and hardships, which is the dominant consideration for this type of case. On remand, the court should balance the equities on the existing record relating to the lamp pole, concrete pad, propane tank, and encroaching portions of the retaining wall and driveway.

---

11. The Corporation argues that negligence is equivalent to bad faith. The Corporation, however, relies on inapposite cases involving insurance or the covenant of good faith and fair dealing. Moreover, the parties have not briefed the question whether the failure to order a survey constitutes negligence. Consequently, we express no opinion on that issue. We leave these issues to the circuit court on remand.

*Encroachment Remedy—Nominal Damages and Allowing an Encroachment to Temporarily Remain*

[¶19.] In addition to its argument claiming entitlement to injunctive relief, the Corporation argues that the court lacked the legal power to award Hoffman an "effective injunction" prohibiting removal of the encroachments[12] while only awarding the Corporation nominal damages. The Corporation contends that the circuit court's denial of Hoffman's claim for an implied easement and the court's conclusion that damages were an adequate remedy at law[13] deprived the court of jurisdiction to grant Hoffman any equitable relief. We disagree.

[¶20.] It is recognized that the appropriate remedy in encroachment cases may include permitting encroachments to remain such that the trespasser obtains an equitable easement. *See Amkco*, 21 P.3d at 29; 3 *Tiffany Real Property* § 815.50, Westlaw (3d ed.) (database updated Sept. 2016). Where a court refuses to order removal of encroachments after balancing the equities, the encroaching party receives an easement so that the landowner "can recover possession of the land in the event that the structure is removed in the future." *Amkco*, 21 P.3d at 29; *see also Christensen v. Tucker*, 250 P.2d 660, 665 (Cal. Dist. Ct. App. 1952) (holding

---

12.   The Corporation claims that the circuit court's order prohibited removal of the encroachments. However, the circuit court's final written judgment did not prohibit removal. The court's judgment provides that the encroachments are "not subject to a court order of removal now or in the future" unless they are subject to relocation by Hoffman or his successors in interest.

13.   For the reasons stated *supra* ¶ 11, we disagree with the circuit court's conclusion that the Corporation had an adequate remedy at law that precluded injunctive relief. Our disagreement does not, however, affect the remedies available to Hoffman. Those remedies are discussed *infra* ¶ 20.

trespasser should be granted an easement rather than quiet title); 1 Dobbs, *supra*, § 5.10(4), at 818. Thus, the circuit court did not abuse its discretion in refusing to order removal of the septic system, which effectively granted Hoffman a temporary easement that will remain in effect until the encroachment is relocated by Hoffman or his successors in interest. The court also did not err in awarding only nominal damages. As the court noted, the Corporation failed to introduce any credible evidence of damages; i.e., diminution in value, rental value, or any other measure of past and future damages as a result of the encroachments. *See Zerr v. Heceta Lodge No. 111*, 523 P.2d 1018, 1024-25 (Or. 1974) (reversing an order requiring removal of encroachment and affirming the award of nominal damages for the resulting easement where landowners offered insufficient evidence of actual damages).

*Conclusion*

[¶21.] With respect to the septic system, the circuit court did not err in denying an injunction to remove it, allowing it to temporarily remain, and awarding nominal damages. Hoffman would suffer disproportionate hardship if he were compelled to remove the septic system, and the Corporation failed to introduce evidence of actual damages. However, we reverse and remand for reconsideration of the remaining encroachments. On remand, the court should balance the relative hardship and equities relating to those encroachments.

[¶22.] GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.